# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### NOVEMBER TERM, 1880.

STATE, EX REL. MARCUS S. RICHARDS, v. WILLIAM A. HAMMER.

STATE, EX REL. FRANCIS QUIN, v. GUSTAVUS A. WIEDENMAYER.

1. A citizen has a standing as an applicant for a *quo warranto*, when the office is a public one.
2. *Quœre*—Whether the title of the applicant for the writ can be set up and tried in the proceedings, as well as the title of the incumbent.
3. It is only in a plain case that a statute will be declared void because its title does not express the object of the law.
4. An act was entitled "An act relating to the assessment and revision of taxes in cities of this state;" the body of the act related to the mode of appointing the members of boards of assessment and revision in cases of taxation. *Held,* that the title sufficiently expresses the subject.
5. But such statute was declared unconstitutional, on the ground that it was a special and local law, regulating the internal affairs of two cities, as it appeared that it applied only to such two cities, and that it never could apply to any others.
6. The question of statutory classification considered.

435

Rules to show cause why informations in the nature of *quo warranto* should not be exhibited.

For the relators, *Benjamin C. Potts.*

For the defendants, *Henry Young.*

Argued at June Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The relators in these cases claim that they, respectively, are members of the board of assessment and revision of taxes in the city of Newark, and that such offices have been usurped by the defendants. The claim of each of these actors rests on similar grounds, and the defence to each application is the same, so that both proceedings can conveniently be considered and disposed of at the same time.

The title which the relators rely on is through an alleged election held by virtue of the act passed in the year 1866, (*Pamph. L., p.* 445,) and it is shown by the testimony taken, and is an admitted fact, that the defendants are now in office under the force of the act of the year 1878. *Pamph. L., p.* 329.

The right thus asserted on the part of the relators has been challenged by the counsel of the defendants, on the ground that it is not sufficiently manifested and substantiated by the proofs. But I shall pause but little on this head, for the subject does not seem of any importance in this inquiry, because, whether, these relators are or are not strictly entitled to fill, at present, the offices in question, they plainly are entitled to a standing, as relators, in a procedure of this nature. The objects here in litigation are public offices, and are therefore things of public concern, in which every resident of the city of Newark has an interest, and I know not how the suit of a tax-payer of that locality is to be repulsed when the

ground of complaint is—for such is the allegation—that the assessment and revision of taxation which affects his property is in unauthorized hands. All that the court requires, in such instance, is to be satisfied that the relator is of sufficient responsibility, is acting in good faith and not vexatiously, and has not become disqualified by his own conduct, with respect to the election that he is seeking to impeach. The authorities are numerous to this purpose. It is indeed intimated, in the briefs of counsel in the present case, that the titles of the relators to these óffices will be presented for judgment by the requisite allegations in the informations sought to be filed, but whether such is the purpose or not, the subject is now unessential, the only question being whether these parties have a right to a *status* enabling them to make their present application, and, as has been said, that *status* is not dependent on official right. It is proper, however, as a precaution against misconception, to say that it is far from clear that the titles of these relators can be put in issue or adjudged upon the contemplated informations, for although, in the courts of some of the states, such a course appears to have prevailed, it would seem not improbable that such practice has originated in a statute on some local usage, for, so far as has been observed, it does not appear to have had, at any time, a footing in the English courts or at the common law. The point, however, is not intended to be decided, for, as it is deemed irrelevant, it has not been fully examined.

Passing, then, from the position of the relators, we come to a consideration of that of the defendants.

That position is assailed on the single ground that the before-mentioned act of 1878, by force of which the defendants have been invested with office, is unconstitutional, and therefore void.

For this arraignment of this law, two causes are assigned, the first of such objections being that the object of the statute is not expressed in its title.

This objection must be overruled. The title of this statute is this: "An act relating to the assessment and revision of

taxes in cities of this state." The purpose accomplished by this law is single—that is, a modification of the mode of appointing the members of the board of assessment and revision, and such an object is sufficiently expressed in this title. This law, in its title, expresses a specific subject to which it relates, and the purpose effectuated is fairly embraced in such subject. In the case cited, of *Rader* v. *Union Township*, 10 *Vroom* 509, the subject stated in the title was so wide a one that the reference to it was calculated to convey no useful information as to the legislative intent embodied in the enactment. In that instance, the object was to organize and establish a public body of a peculiar and unusual character, and such an object could not be indicated by the expression of a general purpose, that was usually effected by well-known agencies. The case was an extreme one, and was so dealt with by the court; and I may here say that I think it is only in perfectly plain cases that it is proper for the courts to vacate statutes on the ground now in question. And in this connection, it is ever to be remembered that the language employed in the titles to' legislative acts is to be interpreted according to its accepted signification, and, tested by this rule, an act described as " An act relating to the assesssment and revision of taxes " would be understood to relate as much to the machinery by which such assessment and revision were to be effected, as to any other part of the affair.

This exception cannot prevail.

The second exception taken to this act is that it contravenes, in its spirit, that provision of the constitution that prohibits the enactment of any local or special law which regulates the internal affairs of towns and counties. *Const.*, § 7, *p.* 11.

As the act thus challenged provides a new method for the selection of the members of the board for the assessment and revision of taxes in the city of Newark, there can be no doubt that, within the meaning of this clause of the constitution, such act is one regulating the internal affairs of that municipality. This law has not only the effect to regulate

State, ex rel. Richards, v. Hammer.

such affairs, but to regulate them in an important particular, for it has the force of substituting, with respect to these considerable offices, an appointment by the mayor and common council, in the place of an election by the citizens at large. This change is radical and of moment, affecting, as it does, in an eminent degree, the entire property of the inhabitants of the city. Therefore, such an innovation, as I have said, must be regarded as a municipal regulation, in the constitutional sense of the term, and the consequence is, the object aimed at cannot be compassed by a law that is special and local.

The question therefore arises, is this law of that character? It does not profess to be such, for its title is, "An act relating to the assessment and revision of taxes in cities in this state." But this descriptive generality is immediately dwarfed and curtailed by the initial words of the body of the enactment, for it at once proceeds to declare, "that in any city of this state where a board of assessment and revision of taxes now exists, such board," &c., the effect being to restrict the operation of the law to those certain localities that were possessed, at the time of the passage of the enactment, of the body of officers so designated. The evidence now before us shows that there were only two localities so circumstanced, the one being the city of Elizabeth and the other the city of Newark. The result therefore is, that the act was intended to apply, and that it does and must ever apply, to these two cities alone, and that the legal effect of this law, as now constituted, is the same as though it had, in express terms, declared that it was not to be operative through the state at large, but in the cities of Elizabeth and Newark only. Can a law thus designed and framed stand the constitutional test?

But a single argument has been presented in its support, which is, that this act is general in its terms, and embraces "all of a group of objects having characteristics sufficiently marked and distinguished to make them a class by themselves." And these qualities, it is contended, bring this case within the requirements of the constitution, as the same is expounded in the case of *Van Riper* v. *Parsons,* 11 *Vroom*

125.  But I do not understand that the decision thus invoked
will bear the construction thus put upon it.   It does not
undertake, as I understand it, to lay down any abstract rule
on this subject, but the expressions quoted are employed in
reference to the facts then under adjudication.   Plainly, a law
may be general in its provisions, and may apply to the whole
of a group of objects having characteristics sufficiently marked
and important to make them a class by themselves, and yet
such law may be in contravention of this constitutional pro-
hibition.   Thus, a law enacting that in every city in the state
in which there are ten churches, there should be three com-
missioners of the water department, with certain prescribed
duties, would present a specimen of such a law, for it would
sufficiently designate a class of cities, and would embrace the
whole of such class, and yet it does not seem to me that it
could be sustained by the courts.   If it could be so sanc-
tioned, then the constitutional restriction would be of no
avail, as there are few objects that cannot be arbitrarily asso-
ciated, if all that is requisite for the purpose of legislation is
to designate them by some quality, no matter what that may
be, which will so distinguish them as to mark them as a dis-
tinct class.   But the true principle requires something more
than a mere designation by such characteristics as will serve
to classify, for the characteristics which thus serve as the basis
of classification must be of such a nature as to mark the
objects so designated as peculiarly requiring exclusive legisla-
tion.   There must be substantial distinction, having a refer-
ence to the subject matter of the proposed legislation, between
the objects or places embraced in such legislation and the
objects or places excluded.   The marks of distinction on
which the classification is founded must be such, in the nature
of things, as will, in some reasonable degree, at least, account
for or justify the restriction of the legislation.   Principles of
this sort can be best elucidated by examples.   I have already
given a sample of a merely arbitrary classification, founded
on no causal relation between the subject matter of such legis-
lation and the things so classified.   A sample of the other, or

legitimate kind, would be signified, in a law that should give to all cities in the state situated on tide-water the privilege of using such waters in connection with their sewers. In such an enactment, but a part of the cities of the state would be embraced, but the classification would be lawful and proper, inasmuch as the places embraced would be possessed of a characteristic distinct from those possessed by the excluded places, such characteristic being of such a nature as to afford a reasonable ground for such special legislation. In the two classes of instances thus exemplified, the basis of the classification of the one would be by a reference to marks of distinction having no connection with the substance of the supposed statute; in the other, the opposite of this would obtain—so that, in the former, the classification would be formal and arbitrary; in the latter, substantial and springing out of the nature of the subject of this legislation. The present law is seemingly of the former kind. The class to which it is made applicable is designated and selected by the mark of each of its members, being possessed of a certain kind of board of officers, a circumstance having no connection but a formal one with the subject matter of this law, and in no way indicating a reasonable ground for making these particular places the object of such special legislation. In all but mere form, as I have said, these places might as well have been designated by name as by a reference to these organic bodies possessed by them, and the effect of this law would have been precisely the same. It seems to me difficult to find any stable ground for sustaining such an act, and therefore these writs should be issued so that the question can be brought before the courts in a formal manner.

With respect to the argument which was pressed upon the attention of the court, and which was founded on the supposed public inconvenience that will have to be encountered, in case these defendants should be ousted, it is sufficient to say that the force of this appeal is entirely dissipated, if we take into the account a consideration which this reasoning ignores. It is not pretended that the illegality which the relator here

attacks is of a temporary or evanescent nature, and which will pass away with even the official term of these defendants, for it is clear that it is a radical and inherent defect—if it is a defect—in the municipal system into which it has become incorporated; nor is it alleged that the present time is peculiarly unpropitious for the removal of such defect—so that the consequence is that if, as an exercise of discretion, from the fear of a possible derangement of the finances of the city, we are to refuse the relief asked, the same motive would be equally prevalent in the future, the result being that the citizens of Newark would be obliged to submit, in perpetuity, to have their taxes assessed and revised by a body of men who, there is some reason to think, have no legal right to perform such functions. In short, the court, in the exercise of its discretionary power, is asked to perpetuate what is not improbably an unconstitutional exercise of power.

Let the writs issue.